Your Honor, it's William Osterhout, appearing on behalf of the intervener and appellant, Picard. The case involving, as others have here, the issue of attorney subpoenas, we think on a rather narrow focus of inquiry. Our position is that the district court abused its discretion in denying Picard's motion to quash this particular subpoena, because under the circumstances of the case, the production of the documents required of the attorney, Rourke, would be tantamount to a communication, a confidential communication, regarding his client, with his client. And that's the standard, I think, in Enri Osterhout, the circuit originally established, rejecting Hodgins-Weig and other prior cases that have said the focus should be on incrimination, whether the client was incriminated. So we don't contend, and we don't have a position as to whether it incriminates Mr. Picard, but we do think it's private communication that should not be required of his lawyer in this particular case. And under seal, there are the scant documents that he had, Mr. Rourke had, consisting of two checks and his own affidavit that he put in, his declaration, in the court documents, I think, checks, explain why, under these circumstances, he feels and the client feels, Mr. Picard feels, that it would be – it would violate the privilege for him to voluntarily give these up and for Mr. Picard not to contest that. The financial arrangements between client and lawyer ever been subject to the privilege? Yes, Your Honor. Under certain circumstances, the Cornerstone case was Baird v. Corner, but that concerned the client's identity as well as the financial arrangements. There's no such issue here, is there? Well, there's no such issue here. This is a matter of communication. The government was well aware of these various identities, wasn't it? Beg your pardon, sir? The government was well aware, is well aware of the various identities, AKAs, that have been used by your client, right? I believe so. I believe so. And again, the question isn't whether they know it already or whether it's privileged, but whether it's proper to extract it from the lawyer. And that's why – that's why we raised the issue in this particular case. And we also raised the Sixth Amendment claim. They have not fared well in this Court, but we raised it anyway because there were circumstances at the time the motion to quash was brought that seemed to us to justify it. Rourke was about to embark on his mammoth trial when he was subpoenaed in October of 2001. He did go to trial after that. The trial was lengthy, and the client was convicted. But he was in the throes of preparation, really, after representing Picard for two years when he served in Kansas with the subpoena. And we felt and feel that this was an interference with the relationship of the parties, with the cornerstone of which is trust and confidence, and the idea that entering into such a trial that my lawyer, if I'm Picard, is called upon to produce evidence that may be used against me is very distressing and undermines the foundation of the Sixth Amendment guarantee. Is that proceeding over now, including sentencing, I mean? The trial's over. He's been sentenced. Rourke's representing him on appeal. Picard's been transferred to Lompoc to serve his life sentence. And so, you know, even though courts, absent actual evidence of interference and damage of the relationship, courts have been very reluctant to come in and say that the Sixth Amendment or the Fifth Amendment's violated, we felt it incumbent on us to raise it in this particular case because of those circumstances. Now, whether the circumstances, if the Court would have felt that that raised a valid claim at the time, whether the circumstances are sufficiently changed may be a matter for the district court to look into. He's representing him. I don't know the details, but there's still a relationship between those parties. He, Mr. Rourke, represents that he feels the appeal has many valid material points, and he hopes that the Tenth Circuit will reverse that conviction. If it does, he'll be in the same position again that he is here. Do you want to save a little time for rebuttal? If Your Honor's wouldn't mind. That'd be fine. Thank you. Thank you very much for your argument. We'll hear from the government. Yes, Your Honor. May it please the Court. My name is Chris Tesco. I represent the United States. I'd like to begin where our defense counsel left off, which is with the issue of whether or not the documents were confidential or privileged under the attorney-client privilege. It's a little – I'm at a disadvantage because I haven't seen the documents, but based on the colloquy both in the district court and with this court, it's my understanding that it relates to alias information and that information is known to the government. Now, I'm not aware of any case law which has held that financial information or identity information that is already known to the government is protected by the attorney-client privilege in this situation. And, in fact, in this court's decision in Tornay, it suggested that where identity information is known to the government, then it isn't protected by the attorney-client privilege. I would note that not only is it conceded that it's known to the government, but Mr. Picard, subsequent to these proceedings in the district court, testified at this criminal trial and admitted to the various identity information and aliases that the government's already aware of. You know, the only trouble that bothers me a little bit about that, and I understand the cases have suggested that, what in the world does it mean if, let's say, the government knows that I am a murderer, but my attorney has information that demonstrates, indeed, I am a murderer, I suppose just because the government knows that's true, it can't get that information from my attorney, right? Correct. So why would it make any difference if the government knows anything, make it X, knows X, but it wants to get confirmation from my attorney that X is true? Well, you start off with the general principle that fee arrangement information is not privileged. Sure. So the difference between your hypothetical and the situation here is that normally you start off with the principle that a client's confession to its attorney is privileged. Here, fee arrangement information is not privileged. There's a narrow exception. Sometimes it's called the Barrett exception. And the case law that defines the contours of that exception has held that it generally only applies to, first, identity information, and this is the Course decision in Rawls. And if you compare that with Hirsch, what you get come away with is that the exception applies to identity information that isn't known to the government and where the revelation of that identity information would be the equivalent of telling the government that the undisclosed client or fee payer is involved in criminal activity. That's where the exception's been applied. So when you look at the exception, then you walk away with the impression that, well, the government already knows the identity information, well, then certainly the exception shouldn't apply. So it's like a burden of persuasion. On the first one, the government has a burden. On the second one, the defense has a burden. Is that the point? Yes, Your Honor, as well as the subject matter of the disclosure. Certain types of subjects aren't protected, and fee information is one of those areas that isn't. Let's suppose that the information in a hypothetical case like this provides the last link in the chain that establishes the government's case. It helps, for example, prove money laundering. As to an element, the government cannot prove without the information, yet its financial and legal, et cetera. Is it subject to subpoena? Your Honor, there is a doctrine called the last link doctrine, and I'm aware generally of the doctrine. I know that there's cases that say there is a doctrine called the last link doctrine, and there are cases that say, well, it's really no different than all the other general principles that we've been saying about attorney-client information, fee arrangement information. And my short answer is that last link doctrine wasn't raised below, wasn't argued to the district court, and I don't believe that in the documents that were submitted to the district court was the argument made that it was last link material. So I don't think it's present here, and without it being raised below and without knowing more about the doctrine because it wasn't raised below, I'm just hesitant to answer. Okay? I think it is a doctrine that might be on its last leg because it's the type of doctrine where the Court's been going more towards general principles as opposed to specific doctrinal categories. But you have to assume that if the government wants it, it must be helpful to their case. Yes, Your Honor. I mean, the government's seeking evidence of criminal conduct. Now, it's the same criminal conduct at that issue in Kansas. It's his LSD manufacturing activity and the conspiracy relating to that activity. And that's why this attorney is here arguing so strenuously that it shouldn't be produced is because he's afraid that it will be used against his client in Kansas, and that's what he told the district court, which is one of the – so, yes, Your Honor, it is evidence of criminal conduct. I don't believe it's last link evidence. With respect to the Sixth and Fifth Amendment arguments, Mr. Osterhout is correct to say that those arguments have been well received by this Court, and certainly were just the general arguments made that this is going to violate the Sixth Amendment. This Court has rejected that argument in Tornay and in cases that follow Tornay. Unless Your Honor has any specific questions, I know there is a jurisdictional issue here that hasn't been raised in the opening argument, and I'd be happy to answer questions about that. I don't see any. Thank you very much for your argument, counsel. Thank you, Your Honor. Thank you, Your Honors. With respect to Rawls and the Hirsch case, Rawls did have an identity component to it, but it wasn't the only thing there. In fact, the subpoena there asked for identity and all kinds of fee-payer information also. And the discussion by the Court, in my view, and we briefed this, did not really limit the principle it enunciated, which was that the information sought could be inextricably bound up with privileged communications, did not really limit that strictly to an identity situation alone. Hirsch was a case where the Court was concerned about an attorney being used as a conduit for unlawful funds, and the concern there that seemed to drive the decision was really the concern that it wasn't a legitimate fee at all, but it was the attorney was his conduct, his service was being misused. We have not raised the last link doctrine, Your Honor, that Mr. Stesk was quite correct. We don't believe that our case falls into that category, quite frankly. We do feel, however, that it's evidence the government wants. They would probably use it in Kansas. It would be very bad for the relationship of attorney and client were that to happen. And the Tornay case, which was cited by the prosecutor, was different because in Tornay, the person hadn't yet been charged, and so you didn't have a case that was really there, and actually Osterhout was the same sort of case. Here, you have a situation with a person proceeding to trial in a complex case with a lawyer he trusts, and I don't feel it's right for the government in those circumstances to subpoena. Roberts. Would your argument be weaker if the government agreed it would not use these documents if produced in the Kansas case? Yes, and, in fact, we sought a protective the government to agree to a protective order, and they wouldn't do it in the court below. Mr. Rourke would have complied had that not been done. Okay. Thank you. Thank both counsels for their arguments, quite helpful. The case just argued will be submitted for decision, and we'll proceed to the next case on the argument calendar, which is the United States against Suarez. Counsel are present.
judges: Fernandez, Hawkins, Thomas